IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FRANCISCO J. FERNANDEZ, §
    Plaintiff, §
v. § NO. EP-13-CV-0200-LS
§
CAROLYN W. COLVIN, §
Acting Commissioner of Social Security §
Administration, §
    Defendant. §

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial before a United States Magistrate Judge, the case was transferred to this Court pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules for the Western District of Texas, to conduct any and all further proceedings in the cause, including trial and entry of judgment. [ECF No. 10]

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner) denying his applications for disability insurance benefits ("DIB") and for supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born in June 1956, completed high school and two years of college education, and can communicate in English. (R:32, 190)[1] He has work experience as a general mechanic welder and as a sewing machine mechanic. (R:33, 64) Plaintiff discontinued working in September

---

[1] Reference to the Administrative Record, contained in Docket Entry Number 16, is designated by an "R" followed by the page number(s).

2010, due to his medical conditions. (R:191)

## II. ISSUES

Plaintiff presents the following issues for review:

1. Whether the final decision of the Commissioner denying benefits is supported by substantial evidence; and

2. Whether the Commissioner applied an incorrect legal standard in determining that Plaintiff was not disabled.

Plaintiff contends that the Administrative Law Judge's residual functional capacity ("RFC") determination is not supported by substantial evidence because he failed to properly consider Plaintiff's limitations. In particular, he asserts that the ALJ failed to consider the limiting effects of Plaintiff's obesity and the combined effect of his obesity with his other impairments. Plaintiff contends that the case should be reversed, or in the alternative, remanded for further administrative proceedings.

## III. PROCEDURAL HISTORY

In October 2010, Plaintiff filed applications for DIB and SSI benefits, with an alleged onset date of September 18, 2010, claiming back injury, head injury, and hypertension. (R:83, 156, 164, 191) His applications were denied initially and upon reconsideration. (R:11, 70-73) Upon Plaintiff's written request for a hearing, an administrative hearing was held on August 16, 2011. (R:11, 27-69) Administrative Law Judge ("ALJ") Barry Robinson issued his decision on May 8, 2012, finding Plaintiff not disabled, and denying benefits. (R:11-19) The Appeals Council denied Plaintiff's request for review on April 22, 2013. (R:1-4)

Plaintiff filed the instant cause on June 20, 2013. [ECF No. 1] Upon the granting of Plaintiff's motion to proceed in forma pauperis, his complaint was filed. [ECF Nos. 4, 5]

Defendant filed an answer and a transcript of the administrative proceedings on September 27, 2013. [ECF Nos. 15, 16] Plaintiff filed a brief in support of his claims on October 30, 2013. [ECF No. 19] On November 25, 2013, Defendant filed a brief in support of the Commissioner's decision denying benefits. [ECF No. 20] This case was transferred to United States Magistrate Judge Leon Schydlower on December 8, 2015. [ECF No. 21]

## IV. DISCUSSION

### A. STANDARD OF REVIEW

The court's review of the Commissioner's decision is limited to two inquiries: 1) whether the decision is supported by substantial evidence on the record as a whole; and 2) whether the Commissioner applied the proper legal standard. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence "is more than a mere scintilla, and less than a preponderance." *Masterson*, 309 F.3d at 272. The Commissioner's findings will be upheld if supported by substantial evidence. *Id.*

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Id.* Conflicts in the evidence are for the Commissioner and not for the courts to resolve. *Perez*, 415 F.3d at 461.

### B. EVALUATION PROCESS

A claimant bears the burden of proving disability, which is defined as any medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Masterson*, 309 F.3d at 271. The ALJ evaluates disability

Defendant filed an answer and a transcript of the administrative proceedings on September 27, 2013. [ECF Nos. 15, 16] Plaintiff filed a brief in support of his claims on October 30, 2013. [ECF No. 19] On November 25, 2013, Defendant filed a brief in support of the Commissioner's decision denying benefits. [ECF No. 20] This case was transferred to United States Magistrate Judge Leon Schydlower on December 8, 2015. [ECF No. 21]

## IV. DISCUSSION

### A. STANDARD OF REVIEW

The court's review of the Commissioner's decision is limited to two inquiries: 1) whether the decision is supported by substantial evidence on the record as a whole; and 2) whether the Commissioner applied the proper legal standard. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence "is more than a mere scintilla, and less than a preponderance." *Masterson*, 309 F.3d at 272. The Commissioner's findings will be upheld if supported by substantial evidence. *Id.*

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Id.* Conflicts in the evidence are for the Commissioner and not for the courts to resolve. *Perez*, 415 F.3d at 461.

### B. EVALUATION PROCESS

A claimant bears the burden of proving disability, which is defined as any medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Masterson*, 309 F.3d at 271. The ALJ evaluates disability

claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) whether the impairment prevents the claimant from performing his past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920.

The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520, 416.920. However, if the claimant has shown he cannot perform his previous work, the burden shifts to the Commissioner to show that there is other work available that the claimant can perform. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999). If the Commissioner establishes other gainful employment, the burden shifts back to the claimant to prove he is unable to perform the alternate work. *Id.*

The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett*, 67 F.3d at 564. "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commission made an error of law." *Id.*

The mere presence of an impairment is not disabling per se. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Rather, it is Plaintiff's burden to establish disability and to provide or identify medical and other evidence of his impairments and how they affect his ability to work. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c). His own subjective complaints, without objective medical

evidence of record, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529, 416.908, 416.928, 416.929.

### C. THE ALJ'S DECISION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 18, 2010, the alleged onset date. (R:13) He determined that Plaintiff had severe impairments consisting of mild cervical disc disease and hypertension. (R:13) However, he found that none of Plaintiff's impairments met or medically equaled the listing of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R:13)

The ALJ next determined that Plaintiff retained the functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), and 416.967(c),[2] except that he could: lift and carry 50 pounds both frequently and occasionally; stand and walk two hours in an 8-hour workday; sit for six hours in an 8-hour workday; push and pull with his upper extremities consistent with his ability to lift and carry; occasionally kneel, crouch, and stoop; never climb ramps, stairs, ladders, ropes, or scaffolds; and never balance or crawl. (R:14)

Based upon vocational expert ("VE") testimony, the ALJ determined that an individual with Plaintiff's RFC could perform Plaintiff's past relevant work as a sewing machine repairer and spot welder as generally performed.[3] (R:19) The ALJ concluded that Plaintiff was not disabled from his alleged onset date through the date of the ALJ's decision. (R:19)

---

[2]Medium work is defined as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c). The full range of medium work involves "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10.

[3]*See* U.S. Dep't of Labor, *Dictionary of Occupational Titles* ("DOT") §§ 639.281-018 (Sewing-Machine Repairer), 819.685-010 (Welding-Machine Tender) (4th Ed., Rev. 1991).

## D. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff asserts that the ALJ erred in determining his residual functional capacity by failing to consider the limiting effects of his obesity, alone and in combination with his other impairments. He argues that the ALJ failed to discuss his obesity in accordance with Social Security Ruling ("SSR") 02-1p. The Defendant responds that the ALJ properly considered the limiting effects of Plaintiff's impairments, including obesity, and that substantial evidence supports the decision of the ALJ.

Residual functional capacity is the most an individual can still do despite his limitations. 20 C.F.R. §§ 404.1545, 416.945. The responsibility to determine the Plaintiff's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The ALJ must determine a claimant's abilities despite his physical and mental limitations based on the relevant evidence in the record. *Perez*, 415 F.3d at 461-62. The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545, 416.929, 416.945. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

### 1. Medical Evidence

The medical evidence of record shows that on November 3, 2010, Plaintiff was seen at the Centro San Vicente Clinic in El Paso, Texas, for complaints of headaches and high blood pressure. (R:316-17, 391-92) Plaintiff reported having hypertension approximately three years prior, but stated that he had stopped taking the medication "a long time ago." (R:316, 391) He appeared alert,

oriented, well developed, and in no acute distress. (R:316, 391) His neck appeared normal. (R:316, 391) The notations indicate that he weighed 229 pounds, was 71 inches tall, and had a body mass index ("BMI") of 31.9.[4] (R:316, 391) Plaintiff was assessed with hypertension and headache syndrome, and was prescribed medication. (R:316-17, 391

On November 9, 2010, Plaintiff was seen at the emergency room at the University Medical Center in El Paso, Texas, for complaints of headaches and neck pain. (R:288) He reported that on September 24, 2010, while working in Dallas, Texas, he was fixing a sewing machine at work and began to feel severe neck pain. (R:288, 293) Plaintiff further reported that he had trouble sleeping due to the neck pain. (R:293) The medical notations indicate that he weighed 105.5 kilograms (approximately 232 pounds). (R:290, 294) A review of systems showed no back pain, and no weakness. (R:293) Upon physical examination, he had normal range of motion and strength and no focal neurological deficits. (R:294) His motor and sensory examinations were normal. (R:294) He was diagnosed with neck strain, was prescribed Diazepam and Naproxen, and was advised on muscle strain care. (R:294, 295)

On December 9, 2010, Plaintiff was seen by Dr. Robert May for a consultative examination. (R:319-21) Dr. May described him as a well-developed obese man who walked with a shuffle due to stiffness in his low back. (R:320) Upon physical examination, Plaintiff weighed 229 pounds with a BMI of 34. (R:320) Plaintiff exhibited limitations in bending from the waist, turning his head side to side, and bending his neck downward. (R:319-20) Straight leg test results were positive. (R:320) An x-ray of the cervical spine showed relatively mild degenerative changes.

---

[4]BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m$^2$). According to guidelines established by the National Institutes of Health, a BMI of 25-29.9 is described as "overweight" and a BMI of 30.0 or above as "obesity" for adults, both men and women. Social Security Ruling 02-1p.

7

(R:323) Dr. May assessed Plaintiff with degenerative joint disease of the cervical and lumbar spine, with limited neck motion, and an inability to stand and work over machines. (R:320) He concluded that Plaintiff had trouble looking above his head, bending down, and getting in different positions to fix machinery. (R:320) Dr. May recommended that Plaintiff obtain an orthopedic consultation, and opined that Plaintiff could possibly be retrained to perform sedentary work. (R:321)

On December 15, 2010, Plaintiff was seen at the Centro San Vicente Clinic for a follow-up visit. (R:388-90) He exhibited no soft tissue swelling and no neurological symptoms. (R:389) He weighed 224 pounds with a BMI of 31.2. (R:389) He appeared alert, oriented, well developed, and in no acute distress. (R:389) His musculoskeletal and neurological systems appeared normal. (R:389-90) Plaintiff was assessed with a normal physical exam, and with hypertension, muscle spasms, and headache syndromes. (R:390) He was advised to lose weight and to walk 4 to 5 times per week for 45 minutes per day. (R:390)

On December 22, 2010, Plaintiff was again seen at the emergency room for complaints of neck pain, pain to the back of the head, and dizziness. (R:300) Upon examination, he had full strength, normal tone, intact sensation in his upper and lower extremities, and a steady gait. (R:303) His back was non-tender, with a normal range of motion. (R:306) Plaintiff denied any psychiatric history. (R:304) He was observed as cooperative, with appropriate mood and affect, and with normal judgment. (R:306) Plaintiff was diagnosed with neck strain, discharged with instructions for home care after muscle strain, and prescribed medication. (R:306)

Plaintiff presented to the clinic on December 30, 2010, for lab results and follow-up on his hypertension and headaches. (R:386-87) He exhibited no soft tissue swelling and no psychological

symptoms. He weighed 228 pounds with a BMI at 31.8. (R:386) Plaintiff was diagnosed with hypertension, hyperlipidemia, and obesity. (R:386) His medications were renewed. (R:387) He was again advised to lose weight and exercise, and to eat less carbohydrates to help decrease the risk of diabetes. (R:387) As before, he was advised to walk 4 to 5 times per week for 45 minutes per day. (R:387)

On January 18, 2011, Dr. Amita Hegde, a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment. (R:341-348) Upon reviewing the medical evidence, she determined that Plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently, sit about 6 hours in an 8-hour workday, stand or walk about 6 hours in an 8-hour workday, and push or pull unlimitedly. (R:342) She found that Plaintiff could frequently balance, stoop, kneel, crouch, and crawl, occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds. (R:343) Dr. Hegde concluded that Plaintiff's alleged limitations were not wholly supported by the evidence. (R:348) This determination was affirmed by Dr. Patty Rowley, another state agency medical consultant. (R:361)

Plaintiff was seen by Dr. Luis Marioni, a chiropractor at Alivio Health Centers in El Paso, Texas, on February 10, 2011, for neck pain. (R:446-49) Plaintiff stated that the pain radiated from the left side of his cervical spine to his head and upper back. (R:446) He rated his pain as a 7, on a scale of 0 to 10, with 10 being the worst. (R:446) Upon examination, Dr. Marioni noted swelling and tenderness in the cervical spine with restricted motion. (R:447) He described Plaintiff as alert, well developed, well groomed, and well nourished. (R:447) Plaintiff's gait was normal and his sensory testing for pain was intact. (R:447) Dr. Marioni found him to be oriented in person, place, and time, with good insight, with recent and remote memory intact, and with higher cognitive

9

functions intact. (R:447) He diagnosed Plaintiff with neck sprain, joint stiffness, and torticollis.[5] (R:447) Dr. Marioni prescribed a topical pain medication, ordered electrical stimulation and ultrasound therapy, and referred Plaintiff to Dr. Jaime Square for pain management. (R:448, 460)

Plaintiff underwent a Functional Capacity Evaluation on March 1, 2011, at the Alivio Health Centers. (R:432) Plaintiff weighed 215 pounds at that time. (R:432) He complained of frequent, sharp, throbbing pain to his neck radiating to his head, but stated that taking his medication helped relieve the pain. (R:433) Plaintiff demonstrated an ability to lift 19 pounds from the floor to waist level height, and 24 pounds from the waist to shoulder level height, with complaints of pain to the neck. Findings also showed decreased range of motion in the neck, low grip strength bilaterally, strength deficits in the upper extremities, and motor examination of 5/5 in the upper extremities. (R:434) Dr. Marioni concluded that Plaintiff was capable of handling light work with up to 20 pounds exertional level and was a good candidate for a rehabilitative exercise program. (R:434-35)

Plaintiff was next seen by Dr. Marioni on March 4, 2011, for continued complaints of neck pain. (R:453) Dr. Marioni diagnosed him with neck sprain and joint stiffness. (R:454) He prescribed a topical pain reliever, ordered electrical stimulation and ultrasound therapy, and referred Plaintiff to Dr. Square for pain management. (R:455)

On March 29, 2011, Plaintiff was seen at the Centro San Vicente Clinic by Dr. Jesus Alonzo for complaints of headaches and hypertension. (R:383-86) Plaintiff reported that he had not taken his hypertension medication for two weeks because he did not have money to pay for it.

---

[5] Torticollis is defined as "wryneck; a contracted state of the cervical muscles, producing twisting of the neck and an unnatural position of the head." *Dorland's Illustrated Medical Dictionary*, 1853 (29th ed. 2000).

(R:384) He weighed 223 pounds with a BMI of 31.1. (R:384) He appeared alert, oriented, well developed, and in no acute distress. (R:384) Plaintiff was assessed with hypertension and received renewal orders for his medications. (R:385)

Dr. Marioni completed a Medical Source Statement on April 18, 2011. (R:349, 350) He determined that Plaintiff could lift or carry up to 10 pounds occasionally and less than 10 pounds frequently, stand or walk less than 2 hours in an 8-hour workday, and sit less than 6 hours in an 8-hour workday. (R:349) He further found Plaintiff to have limited reaching abilities, and found that he could frequently balance and kneel, and occasionally climb, crouch, crawl, and stoop. (R:350) Dr. Marioni based his findings on Plaintiff's Functional Capacity Evaluation. (R:351)

On April 26, 2011, Plaintiff underwent a Physical Performance Evaluation at the Alivio Health Centers. (R:419) Plaintiff's weight was recorded as 215 pounds. (R:419) He demonstrated the ability to lift 29 pounds from the floor to waist level height, and 29 pounds from the waist to shoulder level height, with complaints of neck pain. (R:421) He still exhibited low grip strength and decreased range of motion of the neck. (R:421) Dr. Marioni continued to recommend that Plaintiff was capable of light work, and found that he was a good candidate for placement in a Work Conditioning Program to improve physical conditioning for a return to work. (R:421-22)

On May 5, 2011, Plaintiff was seen at the clinic for follow-up on his hypertension, lipidemia, and obesity. (R:381-82) He was noted as being non-compliant with his lipidemia medications, and it was unknown whether he was compliant with the hypertension medication. (R:381) He weighed 227 pounds with a BMI at 31.7. (R:381) He exhibited no soft tissue swelling and no psychological symptoms. (R:381) He was alert, oriented in time, person, and place, was well developed, and in no acute distress. (R:381) Plaintiff was assessed with hypertension,

hyperlipidemia, obesity, and impaired fasting glucose, and his medications were renewed. (R:381-82)

The next day Plaintiff presented for an office visit with Dr. Marioni. (R:416-18) Plaintiff reported having persistent cervical pain and stiffness and having difficulty doing household chores, gripping a telephone, holding a book, dressing, and bathing. (R:416) Dr. Marioni noted swelling and tenderness to the cervical spine with restricted range of motion. (R:417) Plaintiff exhibited a normal gait and intact sensory testing. (R:417) Dr. Marioni found him to be oriented, with coherent thought processes, good insight, intact recent and remote memory, and intact higher cognitive functions. (R:417) He assessed Plaintiff with neck sprain and restriction of movement. (R:417) Dr. Marioni prescribed topical pain medication and ordered electrical stimulation and ultrasound therapy. (R:418) He also referred Plaintiff for pain management and advised him to seek treatment for his high blood pressure. (R:418)

On May 25, 2011, Plaintiff underwent an MRI examination of the cervical spine. (R:461) Results indicated "nonsignificant" minimal degenerative bulging. (R:461) Results were negative for disc herniations. (R:462)

Plaintiff presented on June 6, 2011, to Dr. Marioni's office for complaints of cervical spine pain and frequent headaches. (R:413-15) Plaintiff reported feelings of depression, fatigue, lack of appetite, lack of concentration, and lack of sleep. (R:413) Dr. Marioni described him as alert, well groomed, and well nourished. (R:414) He noted swelling and tenderness in the cervical spine with restricted range of motion. (R:414) Plaintiff exhibited a normal gait and intact sensory testing. (R:414) Dr. Marioni found Plaintiff to be oriented in person, place, and time, with coherent thought processes, good insight, no obsessive, compulsive, phobic, or delusional thoughts, and no

illusions or hallucinations. (R:414) Plaintiff's recent and remote memory functions and higher cognitive functions were intact. (R:414) His mood was neutral and affect appropriate. (R:414) Dr. Marioni assessed him with neck sprain and restriction of movement. (R:414) He prescribed topical pain medication, ordered electrical stimulation and ultrasound therapy, referred Plaintiff for pain management, and advised him to seek evaluation and treatment for his blood pressure. (R:415) At the conclusion of the report, Dr. Marioni noted that "due to severe depression symptomatology I referred this patient to psychological evaluation." (R:415)

On June 20, 2011, Plaintiff visited Dr. Marioni and reported improvements in his depression symptoms since his June 6th visit. (R:499) Examination results produced no significant changes otherwise from the prior visit. (R:499-501)

Another Functional Capacity Evaluation was conducted on July 11, 2011, at the Alivio Health Centers. (R:464) Plaintiff's weight was recorded at 215 pounds. (R:464) Plaintiff reported frequent stiffness and pain to his cervical spine radiating to his shoulders. (R:465) Upon examination, Plaintiff demonstrated fair overall flexibility. (R:467) His posture was within normal limits. (R:467) He exhibited normal grip strength bilaterally and a motor examination of 5/5 in upper and lower extremities. However, he demonstrated strength deficits in the major muscle groups of the cervical spine and had decreased range of motion of the cervical spine. (R:467) Plaintiff demonstrated an ability to lift 19 pounds from the floor to waist height, and 29 pounds from the waist to shoulder height. (R:467) Dr. Marioni concluded that Plaintiff may be capable of handling light to medium work, exerting up to 35 pounds occasionally and 15 pounds frequently. (R:467-68) Dr. Marioni recommended Plaintiff as a candidate for behavioral assessment evaluation to rule out depression, anxiety disorder, and post-traumatic stress. (R:468)

Dr. Marioni saw Plaintiff again on July 21, 2011. (R:496-98) Plaintiff rated his pain at 5 on a scale of 0 to 10, with 10 being the worst. (R:496) Physical examination results were essentially the same as the prior visits in June 2011. (R:497) Plaintiff also demonstrated good insight, with intact memory and cognitive functions. (R:497) Dr. Marioni reiterated his diagnoses of neck sprain and restriction of movement and recommended use of topical pain medication. (R:497-98) He referred Plaintiff for pain management and for blood pressure evaluation and treatment. (R:498)

On August 11, 2011, Dr. Marioni prepared a Medical Source Statement. (R:487-90) He determined that Plaintiff could lift or carry up to 50 pounds (both "occasionally" and "frequently") and could stand or walk at least two hours in an 8-hour workday. (R:487) He indicated that sitting was not affected by Plaintiff's impairments, but that pushing and pulling with the upper extremities was affected. (R:488) Dr. Marioni stated that he based his conclusions on a medical finding of a "herniated cervical spine disc with radiculopathy."[6] (R: 488) He further determined that Plaintiff could occasionally kneel, crouch, and stoop, but could never climb, balance, or crawl. (R:488)

Plaintiff saw Dr. Marioni on August 22, 2011, complaining of cervical pain. (R:493) He also reported general weakness and a lack of strength in his right arm. (R:493) Despite his new allegations, Plaintiff's physical exam produced essentially the same reported results as his prior exam on July 21, 2011. (R:493-95)

### 2. Administrative Hearing Testimony

At the administrative hearing on August 16, 2011, Plaintiff testified that he worked for a

---

[6]Review of the record shows an x-ray of the cervical spine and an MRI of the cervical spine, indicating mild degenerative changes and no disc herniations. (R:323, 332, 461-62) However, the Court is unable to locate any records showing disc herniation of the cervical spine.

14

New Mexico contract company as a welder for six months. (R:34) When asked why he stopped working the welding job, Plaintiff testified that the contract ended. (R:34) He further testified that if he were offered another welding job, he would not be able to perform the physical demands of the job because of his neck pain, back pain, and headaches. (R:35-36)

When asked if he had sustained a neck injury in a car accident, Plaintiff denied such and explained that he had injured his neck on two separate occasions, both work-related. (R:38) He testified that the more recent injury occurred on September 24, 2010, while working on a sewing machine in Dallas, Texas. (R:39) When asked to explain why he did not obtain treatment until November 2010, Plaintiff explained that he did not have medical insurance. (R:40) Plaintiff testified that he believed his condition had worsened over the last several months. (R:43)

Plaintiff testified that his hypertension was controlled with medication. (R:44, 45) He stated that he experienced daily migraine headaches, constant neck pain, shoulder and arm pain off and on, and low back pain. (R:45-46, 52, 53, 57) He also reported having problems with his right hand, but had no problems picking up small objects. (R:49) Further, he stated that he had vision problems, but had not sought treatment. (R:54-55) He denied having vision problems for driving, and stated that he last drove to the hearing that day. (R:56) He admitted driving approximately twice a week for things such as appointments and therapy. (R:56-57)

When asked how much weight he could lift, Plaintiff responded that he could lift 20 to 25 pounds with his right hand, and 25 to 30 pounds with his left hand. (R:50) Plaintiff also stated that he could walk approximately 1 to 1 ½ blocks before stopping to rest. (R:50) He testified that he could stand for 2 hours in an 8-hour workday and could sit for 1 hour before having to stand or move. (R:57)

Plaintiff's counsel elicited testimony from Plaintiff that he was 5 feet and 10 inches tall, and weighed 225 to 230 pounds. (R:58) Plaintiff testified that he took medication for sleeping and for his headaches. (R:58) Also, he testified that he had to lie down 2 to 3 times per day to rest. (R:59) When asked why he did not follow Dr. May's recommendation to see an orthopedic surgeon, he testified that he did not have insurance or money. (R:60-61)

A vocational expert ("VE") testified at the hearing regarding Plaintiff's past relevant work. The VE stated that Plaintiff had past work as a general mechanic welder, categorized as medium exertional level and unskilled work, and as a sewing machine mechanic or repairer, considered medium exertional level and skilled work. (R:64) When asked by the ALJ whether a hypothetical individual with Plaintiff's age, education, past work experience, and RFC could perform Plaintiff's past relevant work, the VE stated that both jobs could be performed. (R:65) Plaintiff's counsel further questioned the VE as to whether any work would exist if the individual had to lie down 2 to 3 times a day for unscheduled breaks. (R:67) The VE responded that in her opinion such breaks would be incongruent with competitive employment. (R:67)

### 3. ALJ's Consideration of Plaintiff's Obesity and Other Impairments

Plaintiff contends that the ALJ failed to consider the limiting effects of his obesity and the combined effects of obesity with his other impairments in determining his RFC. [ECF No. 19, p.5] He alleges that he is limited in his inability to bend, sit, stand, or walk for extended periods, or to stand and work over machinery. He also alleges limitations arising from having degenerative joint disease of the cervical and lumbar spine, a limited range of motion in his neck, low back pain, fatigue, and sleep problems. [ECF No. 19, p.5]

Social Security Ruling 02-1p requires an ALJ to consider the effects of obesity when

assessing an individual's RFC, including the fact that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. An ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments," but must instead "evaluate each case based on the information in the case record." *Id.*

In the present case, the medical records show that Plaintiff was diagnosed with obesity in December 2010 and in May 2011. (R:381, 386) He was advised to lose weight, eat less carbohydrates, and exercise 4 or 5 times per week for 45 minutes per day. (R:387, 390) During the relevant time period, Plaintiff was 5'10" tall, and weighed between 215 to 232 pounds, with a BMI reaching 34. (R:58, 294, 301, 316, 320, 381, 384, 419, 432, 464)

Although the ALJ did not specifically address obesity, he thoroughly discussed the medical evidence of record, including reference to Plaintiff's weight, height, and BMI, and his failure to comply with taking prescribed blood pressure medication and with medical advice to lose weight and exercise. (R:14-18) He discussed the records from the San Vicente Clinic reflecting essentially normal examinations for any musculoskeletal, neurological, and psychological symptoms. He also examined the consultative opinion of Dr. May, which described Plaintiff's weight and BMI and the physical limitations found by the physician relating to head and neck movement and bending down from the waist. (R:15) The ALJ reviewed Dr. Square's clinical notations showing improvements in pain management and in being able to sleep. (R:16) Further, results from x-rays of the cervical spine showed only mild degenerative changes. (R:323) The MRI examination of the cervical spine revealed "nonsignificant," minimal degenerative changes and no disc herniations. (R:461-62)

The ALJ also discussed the medical evidence from Dr. Marioni's treatment records from February 2011 through August 2011.[7] He examined the medical source statements from Dr. Marioni and attributed more weight to the August 2011 statement than to the April 2011 statement. (R:18) The ALJ found the later statement to be more consistent with the objective evidence, supported by Dr. Marioni's functional evaluation capacity testing, and farther from the date of alleged onset. (R:18) The ALJ also noted that Plaintiff's treatment had been essentially routine and conservative in nature. (R:17) *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). With respect to Plaintiff's mental status, the ALJ found Dr. Marioni's report of severe depression symptoms to be inconsistent with the doctor's own mental status examination which showed essentially normal results.

In addition to reviewing the medical evidence, the ALJ examined Plaintiff's reported daily living activities in his Function Report and found them to be inconsistent with his alleged limitations. (R:18) Therein, Plaintiff stated that he drove a vehicle, went shopping for groceries, attended church and community centers, prepared his own meals, did laundry, ironed clothes, and mopped. (R:249-56) The ALJ also considered the Field Office Disability Report, wherein the field representative assisting Plaintiff with his application observed that he had no difficulties reading, seeing, sitting, standing, walking, using his hands, writing, concentrating, understanding, or answering questions. (R:187-98) In a Disability Report, Plaintiff wrote that he stopped working on September 18, 2010, because his contract job ended and he was subsequently injured in a car accident and unable to continue working. (R:191) Yet at the hearing, Plaintiff denied injuring his

---

[7]The ALJ noted that a chiropractor is not considered an acceptable medical source for social security purposes. (R:17) *See* 20 C.F.R. §§ 404.1513(a), 416.913 (a); *see also Porter v. Barnhart*, 200 Fed. Appx. 317, 319 (5th Cir. 2006). However, a chiropractor's report may be used to show the severity of an impairment and how it affects the individual's ability to work. *Porter*, 200 Fed. Appx. at 319.

neck in a car accident and stated that he injured it on September 24, 2010, while working on a sewing machine. (R:38) The ALJ considered Plaintiff's testimony and found it generally unpersuasive with regard to his alleged limitations. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (ALJ may consider demeanor as one of several factors in evaluating claimant's credibility). The ALJ also noted Plaintiff testimony stating that he weighed 230 pounds and was 5'10" tall. (R:17)

Although the ALJ did not specifically address Plaintiff's obesity in his opinion, there is no evidence in the record that this condition limited Plaintiff more than reflected in the RFC found by the ALJ. *See Hobbs v. Astrue*, 627 F.Supp.2d 719, 727 (W.D. La. 2009) (although the ALJ did not mention claimant's obesity or discuss the impact of her obesity on her ability to work, he "did, in effect, consider the impact of claimant's obesity on her ability to work when he considered the impact of the physical symptoms caused or aggravated by her obesity."). By considering the symptoms of Plaintiff's other impairments, all of which may be aggravated by his obesity, the ALJ's RFC determination, in effect, considered the impact of Plaintiff's obesity on his ability to work. Aside from the diagnoses of obesity in only two treatment records, and aside from his weight and BMI notations, Plaintiff fails to demonstrate how obesity affected his functioning beyond that assessed by the ALJ. None of Plaintiff's doctors attributed any additional functional limitations due to obesity.

Even assuming that the ALJ's failure to address obesity constitutes non-compliance with SSR 02-1p, Plaintiff has failed to demonstrate prejudice from such failure. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (the court will not vacate a judgment unless the substantial rights of a party have been affected); *see also Beggs v. Colvin*, Civ. No. 4:14-CV-129-O, 2015 WL

5542540 at *6 (N.D. Tex. Aug. 31, 2015), *adopted by* 2015 WL 5547010 (N.D. Tex. Sept. 15, 2015) (ALJ's failure to address obesity did not require remand where Plaintiff failed to show obesity affected her functioning, and thus failed to show prejudice). Here, Plaintiff has not shown, through objective evidence or otherwise, any functional limitations resulting from his obesity beyond those assessed in the ALJ's RFC determination. Consequently, his argument is unavailing.

## V. CONCLUSION

Accordingly, based upon a review of the evidence, the Court finds that the ALJ's RFC determination comports with relevant legal standards and is supported by substantial evidence. Therefore, Plaintiff's assertions of error are without merit. Based on the foregoing, the Court hereby ORDERS that the decision of the Commissioner be AFFIRMED consistent with this opinion.

SIGNED and ENTERED on May 5th, 2016.

LEON SCHYDLOWER
UNITED STATED MAGISTRATE JUDGE